Submitted on record and briefs May 10, reversed and remanded in part; otherwise affirmed October 30, 1996

Skip MAGEE
and Janet Magee,
husband and wife,
*Appellants,*

*v.*

ALL TERRAIN CONTRACTORS, INC.,
an Oregon corporation,
and Oscar W. and Viki Dyrdahl,
husband and wife,
*Respondents.*

(92-2126-L-2; CA A83920)

926 P2d 323

Patrick G. Huycke filed the brief for appellants.

Respondents Oscar W. and Viki Dyrdahl filed the brief *pro sese*.

No appearance for All Terrain Contractors, Inc.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

In this action for personal property foreclosure and recovery under a note, plaintiffs appeal a judgment ordering defendants to pay plaintiffs $91,387.40, together with interest at the rate of 9 percent. Plaintiffs contest the rate at which the trial court ordered interest to accrue and the court's failure to award other requested relief. We affirm in part and reverse in part.

We review the facts *de novo*. ORS 19.125(3). Beginning in July 1988, plaintiffs made a number of loans to defendants, a closely-held corporation and its sole shareholders, Oscar and Viki Dyrdahl.[1] Some of the loans were evidenced by promissory notes, others were not. Some promissory notes provided for security interests in defendants' business equipment, others did not. The amounts of the loans ranged from $750 to $75,000. Defendants encountered financial problems and had difficulty making payments on the loans. On August 16, 1991, defendants executed a new promissory note to plaintiffs in the amount of $145,000. The interest rate was 15 percent from the date of execution. Consideration for that note included a reduced principal balance on the outstanding notes. In return, plaintiffs received a security interest in several more pieces of defendants' business equipment. The note contained an acceleration clause.

Defendants made no payments on the $145,000 note. Plaintiffs invoked the acceleration clause, making all principal and accrued interest immediately due and payable. In November 1991, plaintiffs repossessed, and later sold, some of the equipment in which they had a security interest. Plaintiffs also took possession of an item of equipment (a "shoring box") in which they did not have a security interest.

Plaintiffs sued defendants for foreclosure of their security interest in the other equipment, for collection of the balance due on the $145,000 note, and for misrepresentation regarding the value of the collateral securing the $145,000

---

[1] Oscar and Viki Dyrdahl appear *pro se*. They do not purport to represent defendant All Terrain Contractors, Inc., as well. When we refer to defendants, therefore, we mean the Dyrdahls only.

note. The parties tried the case to the court. On August 18, 1993, the trial court filed a written opinion and findings. The trial court found, as relevant to this appeal, that

"(1) The Defendant and Plaintiff agreed on August 15, 1991 that the Defendant owed Plaintiff $145,000 with 15% interest for all moneys previously loaned. The parties entered into a note and trust deed to memorialize this agreement.

"Nothing has been paid on this note by the Defendant.

"(2) The Plaintiff foreclosed a security agreement on certain personal property which was sold for $50,250.00 less $1,137.40 expenses which was a commercially reasonable sale. The Defendant is entitled to a credit for this amount on the note and trust deed.

"(3) The Plaintiff was responsible for the loss of the shoring box as a voluntary bailee when he, through his agent, took possession of it. The reasonable value of the shoring box is $4,500. The Defendant is entitled to $4,500 credit on the $145,000 note.

"* * * * *

"(5) The Defendant is in default on the Magee note and trust deed. The court will allow foreclosure for the face value of the note less the credits set out above for a total of $91,387.40."

On August 27, 1993, defendants filed objections to proposed findings. The trial court held a hearing on these objections on September 20, 1993, and orally made several revised findings. The court directed plaintiffs' attorney to submit a proposed form of judgment in conformance with those revisions. When plaintiffs' attorney had not done so by March 14, 1994, defendants' attorney submitted a proposed form of judgment. This proposed judgment was signed and entered by the trial court.

The judgment, as relevant to this appeal, provided for

"judgment in favor of plaintiffs and against defendants All Terrain Contractors, Inc., Oscar W. Dyrdahl and Viki Dyrdahl in the amount of $91,387.40, together with interest

thereon at the rate of 9% per annum from the date judgment is entered until paid.

"* * * * *

"20. Each and every other claim, counterclaim and form of relief prayed for by plaintiffs and defendants All Terrain Contractors, Inc., and Oscar W. Dyrdahl and Viki Dyrdahl, as between these parties is denied and hereby dismissed with prejudice."

In their first assignment of error, plaintiffs argue that the trial court erred in failing to award them interest at the contract rate of 15 percent and in failing to apply credits for the amounts realized from the sale of collateral first to interest and then to principal.

As to the rate of interest, plaintiffs argue that there is no reason for awarding them less than the 15 percent specified in the $145,000 note. Defendants' response is not altogether clear; it appears that they argue that the $145,000 note itself was not valid for want of consideration and, therefore, the interest stated therein is unenforceable. Defendants, however, have not cross-appealed the judgment, nor have they cross-assigned error to the trial court's finding as to the validity of the $145,000 note. In any event, we conclude on *de novo* review that the note was valid. Plaintiffs, therefore, are entitled to interest at the contract rate of 15 percent.

As to the application of credits for amounts realized from the sale of collateral, plaintiffs argue that some of the credits were improperly applied first to principal, instead of first to interest. In particular, plaintiffs argue that credit for the value of the shoring box ($4,500) should first be applied to interest due on November 4, 1991, the date defendants took possession of the box. As to the sale of repossessed collateral, plaintiffs argue that credits for the amounts realized, less foreclosure costs, should be applied first to the interest due on the dates of the respective sales. Defendants make no response to this portion of the first assignment of error.

In support of their argument, plaintiffs refer to ORS 79.5040, which provides, in part:

"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then

condition or following any commercially reasonable preparation or processing. * * * The proceeds of disposition shall be applied in the order following to:

"(a) The reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorney fees and legal expenses incurred by the secured party.

"(b) The satisfaction of indebtedness secured by the security interest under which the disposition is made.

"(c) The satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of the interest of the holder, and unless the holder does so, the secured party need not comply with the demand of the holder."

Although that statute provides that proceeds of a foreclosure sale must be applied first to foreclosure-related expenses, then to "satisfaction of indebtedness," it does not resolve the question before us, which is whether, in satisfying indebtedness, the proceeds must be applied first to principal or first to interest.

■     We generally examine statutes in the light of existing law. *See, e.g., Swarens v. Dept. of Rev.*, 320 Or 326, 333, 883 P2d 853 (1994) (statute construed in context of prior enactments). The "existing law" that provides that analytical context includes the preexisting common law; thus, if a statute is silent on a matter, we generally look to the common-law rule that predated the statute. *See, e.g., Hatley v. Stafford*, 284 Or 523, 526 n 1, 588 P2d 603 (1978) (where statute is silent as to exceptions to statutory parol evidence rule, preexisting common-law exceptions continue to be valid); *Brown v. Transcon Lines*, 284 Or 597, 610-11, 588 P2d 1087 (1978) (where neither statute nor legislative history shows intention to negate preexisting common-law remedy, new remedy held to be cumulative with statutory remedy).

At common law, courts in this state follow the "United States rule," which requires allocating partial payments on a debt first to interest and then, if the payment exceeds interest due, to principal. *Ainslie v. Spolyar*, 144 Or App 134, 145-46, 926 P2d 822 (1996), *citing First National Bank v. Courtright*, 82 Or 490, 499, 158 P 277, 161 P 966 (1916). We have examined the text of ORS 79.5040(1), its context, relevant case law and legislative history that exists on the enactment of the Commercial Code, *see Security Bank v. Chiapuzio*, 304 Or 438, 445 n 6, 747 P2d 335 (1987) (noting paucity of legislative history of enactment of Oregon version of Uniform Commercial Code), and we have uncovered no evidence that the legislatur) e intended to abrogate the common-law "United States rule." We further find no meaningful distinction between allocating partial payments on a debt and allocating foreclosure proceeds to satisfy a debt. Accordingly, we conclude that the "United States rule" of allocation applies and that the trial court erred in allocating the foreclosure proceeds first to principal and then to interest.

■     Plaintiffs' second assignment of error is that the trial court erred in failing to find that plaintiffs had a valid security interest in additional equipment and in failing to allow foreclosure of that security interest. Specifically, plaintiffs contend that they are entitled to a judgment of foreclosure on a 1980 Case 450B bulldozer and a 1973 Western Star dump truck. Plaintiffs filed documents to obtain a security interest in the bulldozer but not the dump truck. Defendants respond by stating that plaintiffs have already foreclosed "all of Defendants' equipment."

Several statutes are germane to our resolution of this assignment of error as to the 1980 Case 450B bulldozer. The provision of the Uniform Commercial Code that specifies when a security interest attaches or becomes enforceable provides, in relevant part:

"[A] security interest is not enforceable against the debtor * * * with respect to the collateral and does not attach unless:

"(a) [T]he debtor has signed a security agreement which contains a description of the collateral * * *;

"(b) Value has been given; and

"(c) The debtor has rights in the collateral."

ORS 79.2030. The relevant foreclosure statute provides, in part:

"[A] lien upon * * * personal property, * * * whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. * * * [I]n addition to the decree of foreclosure and sale, if a promissory note or other personal obligation for the payment of the debt has been given by the lien debtor * * *, the court also shall decree a recovery of the amount of the debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money."

ORS 88.010.

We hold that plaintiffs have an enforceable security interest in the 1980 Case 450B bulldozer. On August 16, 1991, defendants signed a security agreement that contains a description of the bulldozer. The agreement also provides that value was given, and we find that the evidence amply supports that assertion: sufficient value was given in the form of forgiveness of part of the prior debt. Finally, we find that defendants have rights in the bulldozer. The security interest was perfected by plaintiffs' filing of a financing statement, signed by defendants, with the Secretary of State on February 12, 1991. Although perfection is not required for the security interest to be enforceable, we find the fact that defendants signed a financing statement persuasive evidence that they in fact owned the bulldozer. We conclude, therefore, that the trial court erred in failing to allow foreclosure of the 1980 Case 450B bulldozer.

As to the 1973 Western Star dump truck, we note that defendants introduced at trial a Motor Vehicles Division repossession certificate, dated January 2, 1992, indicating that plaintiff Skip Magee repossessed, without judicial process, a 1973 Western Star vehicle. None of plaintiffs' evidence contradicts the clear implication of that evidence, which is that they have already repossessed the 1973 Western Star dump truck. Accordingly, we conclude that the trial court did

not err in declining to order a judgment of foreclosure for that piece of equipment.

Plaintiffs' third assignment of error is directed at the trial court's failure to award them attorney fees and costs. At trial, however, plaintiffs failed to request attorney fees or costs. The trial court did not err. *Magee v. Dyrdahl*, 144 Or App 270, 926 P2d 319 (1996).

Reversed and remanded for entry of judgment awarding interest at 15 percent, allowing foreclosure of 1980 Case 450B bulldozer, and requiring proceeds from sale of shoring box to be applied first to interest on debt; otherwise affirmed.