**Robert ROBERTS, Plaintiff,**

v.

**INTERSTATE DISTRIBUTOR CO., Defendant.**

**No. CV 01–561–BR.**

United States District Court, D. Oregon.

Oct. 25, 2002.

Michael D. Callahan, Sharon Stevens, Callahan & Stevens, Salem, OR, for Plaintiff.

Alan M. Lee, Bullard Smith Jernstedt Harnish, Portland, OR, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Plaintiff's Petition for Award of Attorney Fees and Costs (# 66) and Plaintiff's Statement of Costs and Disbursements (# 70). Plaintiff brought this diversity action alleging Defendant engaged in unlawful employment practices in violation of Or.Rev.Stat. § 659.121.[1] In particular, Plaintiff asserted Defendant violated Or. Rev.Stat. § 659.410 when it took adverse employment actions against Plaintiff because he utilized the workers' compensation system. Plaintiff prevailed at a jury trial. The jury awarded Plaintiff $2,773.68 in economic damages.

For the reasons that follow, the Court **GRANTS in part** Plaintiff's Petition for Award of Attorney Fees and Costs and awards Plaintiff attorneys' fees of **$30,450** on his retaliation claim. The Court also **GRANTS** Plaintiff's Statement of Costs and Disbursements and awards Plaintiff **$370.50** as costs.

## ATTORNEYS' FEES

Plaintiff requests an award of $35,112.50 in attorneys' fees. Defendant apparently concedes Plaintiff is entitled to an award of attorneys' fees, but it challenges the amount on the following grounds: (1) the hourly rate charged by Plaintiff's attorneys is too high, (2) Plaintiff may not recover attorneys' fees for clerical or messenger work performed by his counsel, and (3) Plaintiff may not recover attorneys'

---

**1.** The Oregon Legislature amended the labor and employment laws in 2001. As a result, many of the statutory provisions that relate to those topics have been re-numbered. All references to statutory provisions in this Opinion and Order refer to the 1999 statutes unless otherwise noted.

fees for the time his attorney spent waiting for the jury verdict.

## STANDARDS

In a diversity case, the availability and amount of attorneys' fees are governed by state law. *See Kern Oil & Refining Co. v. Tenneco Oil Co.,* 792 F.2d 1380, 1388–89 (9th Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987). Plaintiff's sole claim here was for unlawful employment practices pursuant to Or.Rev.Stat. § 659.121. Section 659.121(2) provides "the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal."

When an award of attorneys' fees is authorized by statute but left to the discretion of the court, Or.Rev.Stat. § 20.075 (2001) mandates a two-step inquiry. Under § 20.075(1), a court must consider eight nonexclusive factors when deciding whether an award of attorneys' fees is warranted. *See Preble v. Dep't of Revenue,* 331 Or. 599, 602, 19 P.3d 335 (2001). If the court elects to award attorneys' fees, § 20.075(2) then requires the court to consider the factors identified in subsection (1) together with the eight factors set forth in subsection (2) to determine the amount of the award. *McCarthy v. Or. Freeze Dry, Inc.,* 327 Or. 185, 188, 957 P.2d 1200 (1998).

The objection of the party opposing an award of attorneys' fees should "play an important role in framing any issues that are relevant to the court's decision" regarding an award of attorneys' fees. *Id.* A court must include in its order a brief description of or citation to the factors on which it relies when granting or denying an award of attorneys' fees. *Id.* A court is under no obligation, however, to make findings about irrelevant or immaterial factual matters or legal criteria. *Id.*

## DISCUSSION

### 1. Plaintiff Is Entitled to an Award of Attorneys' Fees Pursuant to Or.Rev. Stat. § 20.075(1).

Plaintiff seeks an award of attorneys' fees on the grounds that he prevailed at trial over Defendant's objectively unreasonable litigation tactics. Plaintiff asserts Defendant presented a "fierce and pesky defense" because of the potential ramifications on Defendant's return-to-work policy. Plaintiff contends Defendant declined Plaintiff's request to mediate the matter, refused to respond to Plaintiff's settlement demand shortly before trial, and generally demonstrated through its counsel's actions and statements that it wanted to litigate the larger legal issue regarding the proper interpretation of the workers' compensation anti-discrimination statute rather than resolve this particular case.

Even though Defendant apparently concedes Plaintiff is entitled to some award of attorneys' fees, Or.Rev.Stat. § 20.075(1) requires the Court to consider eight nonexclusive factors to determine whether to exercise its discretion to award attorneys' fees. The Court has evaluated all of the statutory factors in the circumstances of this litigation as follows:

### a. Factor (a) weighs in favor of an award.

Section 20.075(1)(a) requires a court to consider:

The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

In this matter, the jury found Defendant retaliated against Plaintiff for his utilization of the workers' compensation system. In particular, the jury found Defendant took adverse employment actions against

Plaintiff because its workers' compensation insurer told Defendant it was denying Plaintiff's claim for benefits. Even so, the Court granted Defendant's Motion for Directed Verdict on the issue of punitive damages because Plaintiff failed to present sufficient evidence for a reasonable juror to conclude Defendant's actions were reckless, malicious, or in bad faith. The Court, therefore, finds this factor weighs in favor of an award but is not significant.

### b. Factor (b) weighs in favor of an award.

Section 20.075(1)(b) requires a court to consider:

> The objective reasonableness of the claims and defenses asserted by the parties.

Plaintiff's claim to recover under Oregon's workers' compensation discrimination statute, Or.Rev.Stat. § 659.410, was based on a novel theory of law. Plaintiff argued the plain language of Or.Rev.Stat. § 659.410(1) indicates an employee also enjoys a protected status when he "invokes" or "utilizes" the procedures provided for in the workers' compensation laws. Plaintiff contended an employee who files a workers' compensation claim has a protected status that applies to all subsequent activities and actions that are part of or related to his pursuit of that claim. Plaintiff further argued he had a right to receive an initial resolution of his workers' compensation claim from the insurer and to appeal a denial of his claim as specifically provided by the workers' compensation laws. Plaintiff asserted, therefore, any actions taken "because of" the denial of his claim, in fact, arose from Plaintiff's utilization of the procedures set out in the workers' compensation laws. Accordingly, Plaintiff contended Defendant's admissions that it terminated Plaintiff's light-duty assignment and his employment after and because of the denial of Plaintiff's workers' compensation claim constituted direct evidence that Defendant violated § 659.410(1).

Defendant, on the other hand, argued Plaintiff could recover under Or.Rev.Stat. § 659.410(1) only if Defendant took an adverse action against Plaintiff "because he filed a workers' compensation claim." Defendant contended it placed Plaintiff in a light-duty assignment that was approved by his physician after Plaintiff was injured at work. Defendant argues it did not take an adverse action against Plaintiff because he filed a workers' compensation claim, but rather because Plaintiff's claim for benefits was being denied.

Defendant filed a Motion for Summary Judgment, and Plaintiff advanced his interpretation of the discrimination statute in response. The Court denied Defendant's Motion in an Opinion and Order dated April 18, 2002. The Court concluded the material facts of the case generally were not in dispute, and the issue was primarily one of statutory interpretation. Although this Court noted there were no Oregon cases directly on point, the Court relied on statements of policy and general interpretations of the anti-discrimination statutes by the Oregon Supreme Court and Court of Appeals to support its conclusion that the insurer's initial denial of Plaintiff's workers' compensation claim was merely an interim step in Plaintiff's ongoing utilization of the workers' compensation system. Plaintiff's receipt of that initial denial, therefore, was protected by Or.Rev.Stat. § 659.410(1).

After the Court issued its Opinion and Order, Defendant attempted to relitigate the issue in its Motions in Limine and proposed Jury Instructions. Defendant also filed a Motion to Certify a Question to the Oregon Supreme Court on the issue previously decided by this Court only two days before the pretrial conference.

The Court finds the parties each advanced reasonable and viable claims and defenses with respect to the interpretation of Or.Rev.Stat. § 659.410(1). The Court, however, concludes it was not objectively reasonable for the Defendant to proceed to trial and to continue to litigate the interpretation of the anti-discrimination statute after the Court denied Defendant's Motion for Summary Judgment. This factor, therefore, supports an award of attorneys' fees.

### c. Factor (c) weighs in favor of an award.

Section 20.075(1)(c) requires a court to consider:

The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

The Court finds there is no risk that an attorneys' fee award to Plaintiff would deter others from pursuing good faith claims in similar circumstances. Indeed, an award would promote the remedial purposes of the Oregon anti-discrimination statutes. The Court also concludes there is little risk that an award of attorneys' fees would deter employer-defendants from asserting good faith defenses in similar cases. This factor, therefore, weighs in favor of an award.

### d. Factor (d) is inapplicable.

Section 20.705(1)(d) requires a court to consider:

The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

This factor does not apply because, as explained above, neither party asserted meritless claims or defenses.

### e. Factor (e) is neutral.

Section 20.705(1)(e) requires a court to consider:

The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

The Court finds nothing in the record to indicate the parties and their attorneys were less than thorough, thoughtful, and well-prepared. Throughout this litigation, the parties and their attorneys acted in an objectively reasonable and diligent fashion and, therefore, nothing in their conduct tips the balance in favor of or against an attorneys' fee award.

### f. Factor (f) is neutral.

Section 20.705(1)(f) provides:

The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

Plaintiff's counsel assert Defendant's statements and actions throughout this action revealed its desire to litigate the underlying legality of their return-to-work policy and a reluctance to resolve Plaintiff's individual claims short of trial and, undoubtedly, appeal. The record reflects Defendant made Plaintiff a "very modest offer" of an unspecified amount at an unspecified time that Plaintiff apparently denied. Defendant declined Plaintiff's offer to mediate the matter and failed to respond to Plaintiff's settlement demand before trial even though the material facts were undisputed and the Court had ruled in favor of Plaintiff on his legal theory of recovery. The amount of Plaintiff's demand, however, is unknown. In the Pretrial Order, Plaintiff sought $8,606 in economic damages, $500,000 in noneconomic damages, reinstatement/front pay, and $500,000 in punitive damages. The jury only awarded Plaintiff a total of $2,773.68 in economic damages.

The Court is unable to conclude from this record whether either of the party's efforts in pursuing settlement were objectively reasonable because the parties have

not presented any specific evidence regarding those efforts. Although the Court commends Plaintiff's willingness to enter into mediation and his attempt to re-initiate settlement discussions on the eve of trial, it is unclear whether Plaintiff's demands were unrealistic or unreasonable in light of the jury's verdict. Accordingly, the Court concludes this factor is neutral.

### g. Factor (g) is inapplicable.

Section 20.075(1)(g) requires a court to consider:

> The amount that the court has awarded as a prevailing party fee under ORS 20.190.

Plaintiff did not request and the Court has not awarded a "prevailing party fee" pursuant to Or.Rev.Stat. § 20.190. This factor, therefore, is inapplicable.

### h. Factor (h) weighs in favor of an award.

Section 20.075(1)(h) requires a court to consider:

> Such other factors as the court may consider appropriate under the circumstances of the case.

The parties did not raise additional factors for the Court to consider pursuant to § 20.075(1). The Court notes, however, before the enactment of Or.Rev.Stat. § 20.075(1), the Oregon Court of Appeals construed Or.Rev.Stat. § 659.121(1) to require an award of attorneys' fees to a prevailing plaintiff absent unusual circumstances. *See Schlumberger Tech., Inc. v. Tri–Met,* 145 Or.App. 12, 21 n. 9, 929 P.2d 331 (1996), *rev. denied,* 325 Or. 80, 934 P.2d 1126 (1997). Although the legal landscape changed with the enactment of Or. Rev.Stat. § 20.075, the court still must take this judicially-created rule into account. *See Stocker v. Keith,* 178 Or.App. 544, 551–52, 38 P.3d 283 (2002) (when determining whether to award attorneys' fees in a case involving claims under the Residential Landlord Tenant Act, a court must take into account the judicially-created rule in such cases that a prevailing party ordinarily is entitled to attorneys' fees in the absence of unusual circumstances). This factor weighs in favor of an award to Plaintiff.

In summary, four of the requisite factors weigh in favor of an award of attorneys' fees, two are neutral, and two do not apply. In the exercise of its discretion, the Court concludes Plaintiff is entitled to an award of attorneys' fees pursuant to Or. Rev.Stat. § 20.275(1).

### 2. Plaintiff Is Entitled to an Award of $31,500 in Attorneys' Fees Pursuant to § 20.075(1) and (2).

To determine the amount of attorneys' fees, a court must consider both the factors enumerated in § 20.075(1) as described above and the additional factors enumerated in § 20.075(2). The additional factors are:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

> (c) The fee customarily charged in the locality for similar legal services.

> (d) The amount involved in the controversy and the results obtained.

> (e) The time limitations imposed by the client or the circumstances of the case.

> (f) The nature and length of the attorney's professional relationship with the client.

> (g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

Or.Rev.Stat. § 20.075(2).

The amount Plaintiff seeks in attorneys' fees reflects 140.5 billable hours of work by his attorneys to prosecute this action from its inception through trial and entry of judgment. Plaintiff requests an award of fees based on the following: Attorney Michael D. Callahan, 115.2 hours at $225 per hour; Attorney Sharon Stevens, 25.3 hours at $225 per hour; and Attorney Sharon Stevens, 28.0 hours as co-counsel for the pretrial conference and trial at $125 per hour.

Plaintiff asserts the hourly rates charged by his attorneys are reasonable and the effort expended by his attorneys and staff to prosecute this action was reasonable and necessary. Plaintiff acknowledges the amount of fees he seeks is significant in comparison to the amount of his recovery. He argues, however, his claim for noneconomic damages involved materially similar issues and facts, and the time his attorneys spent on the noneconomic damages claim cannot and should not be separated from the time they spent on the economic damages claim. Plaintiff further argues the amount of time his attorneys spent on this matter was necessary and reasonable in light of the novelty of the issues presented; Defendant's vigorous defense of the case, including the filing of a Motion for Summary Judgment, multiple Motions in Limine, and a Motion to Certify a question to the Oregon Supreme Court; Defendant's refusal to enter into serious settlement negotiations because of its larger agenda regarding its return-to-work policy and the interpretation of Oregon's anti-discrimination statute; and the fact that Plaintiff prevailed at trial.

Defendant, however, contends the amount of Plaintiff's request is unreasonable in several respects. Defendant argues the premium hourly rate of $225 set by Plaintiff's counsel is too high. In particular, Defendant argues the requested rate is unreasonable because Plaintiff's counsel charged a lower hourly rate of $175 for other matters during the same period. Defendant also argues the rate is unreasonable because the Oregon State Bar 1998 Economic Survey indicates the median hourly billable rate for attorneys practicing in the same area at that time was $143. Although Defendant acknowledges hourly rates have increased since 1998, it suggests a 30% increase of the median rate to $185 per hour would be more reasonable.

Defendant also argues Plaintiff's counsel cannot bill for their time spent traveling to and from Portland to file documents personally in this Court because such activities are "clerical or messenger" duties that are not properly billable to an attorney. Finally, Defendant argues Plaintiff may not recover fees for Stevens's time spent waiting for the return of the jury verdict. Defendant asserts an award of $24,105.50 is appropriate.

Plaintiff submitted two Affidavits from Stevens and one Affidavit from Callahan in support of his Petition for Attorneys' Fees. In addition, Plaintiff also submitted the Affidavits of David W. Hittle and Craig A. Crispin. Hittle, a lawyer with nearly 30 years experience practicing in the Salem, Oregon, area, states the rates charged by Stevens and Callahan are within the range of reasonable hourly rates in the community, and both the services rendered and the time attributed to those services are reasonable. Hittle also expresses his opinion that the total fee requested by Plaintiff is reasonable. Crispin, a lawyer with 20 years experience practicing in the Portland, Oregon, area, states the top hourly rate charged in this case is well within the range of reasonable rates. Crispin expresses his opinion that the time expended

and the services rendered on this case were reasonable and necessary with the exception of two items: 0.2 hours of duplicative time in the review of this Court's Opinion and Order regarding summary judgment and 1.0 hour spent waiting for the return of the jury verdict. Crispin explains time spent waiting for the jury to return a verdict "typically" is not subject to reimbursement and should be granted only when counsel is unable to return to her office or to attend to other work. He recommends a deduction of one hour to account for time when Plaintiff's counsel could have worked on other matters.

In support of its objections to the Petition, Defendant submitted the Affidavit of its attorney in this matter, Alan M. Lee. Lee states his hourly rate and the hourly rate of the litigation shareholders in his firm increased approximately 20–35% since January 1, 1998. Although Lee acknowledges he has no specific information regarding the increase of rates at other firms, he expresses his belief that this percentage increase is representative of other firms as well.

The Court acknowledges all of the affiants are seasoned and knowledgeable attorneys with significant experience in employment litigation. Nevertheless, the Court must exercise its own independent judgment when deciding the amount of a reasonable award of attorneys' fees to Plaintiff.

### a. Reasonableness of the Hourly Rate

Several of the factors enumerated in Or.Rev.Stat. § 20.075 bear on the issue whether a requested hourly billing rate is reasonable, including: (a) the time and labor required in the proceeding, including the novelty and difficulty of the questions involved and the level of skill needed to properly perform the legal services; (b) the likelihood, if apparent to the client, that the acceptance of the particular employment would preclude the attorney from taking other cases; (c) the fee customarily charged in the locality for similar services; (d) the amount involved in the controversy and the results obtained; (f) the nature and length of the attorneys' professional relationship with the client; (g) the experience, reputation, and ability of the attorney performing the services; and (h) whether the fee is fixed or contingent.

To determine whether a requested hourly rate is reasonable, this Court uses the Oregon State Bar Economic Survey (Economic Survey) as an initial benchmark. Although attorneys may argue for higher rates based on inflation, specialty, or any of the factors described above, counsel are encouraged to provide ample justification for deviating from the rates in the Economic Survey.

Plaintiff asserts his attorneys should be compensated at an hourly rate of $225. Callahan, Plaintiff's trial attorney, was admitted to the Oregon State Bar in 1973. Stevens was admitted to the California State Bar in 1977 and the Oregon State Bar in 1978. Plaintiff's attorneys are located in the Salem area, which is classified in the Economic Survey as the Upper Valley (Marion, Polk, and Yamhill Counties). The Economic Survey rates were based on a 1997 survey of Oregon State Bar members. The hourly rates established by the Economic Survey are adjusted geographically to reflect differences in the cost of doing business in different areas of Oregon. According to the Economic Survey, the median hourly rate for attorneys with 21–30 years of experience who practiced in the Salem area in 1997 was $143 for attorneys.

The Court notes employment discrimination claims usually do not involve novel issues of law. This matter, however, was

an exception to that general rule. As described above, Plaintiff's theory of the case relied on a novel and somewhat complicated interpretation of Oregon's anti-discrimination statutes. No court previously had applied the anti-discrimination statutes to a fact pattern such as this. As a result, this matter required more time, labor, advanced skills, and knowledge of the practical and legal workings of the workers' compensation system than the typical employment discrimination case. Moreover, the Court finds Plaintiff's counsel demonstrated the requisite skill necessary to perform properly and efficiently the required legal services in the prosecution of Plaintiff's action consistent with the skill level of attorneys with over 20 years of practice experience.

In addition, the Court concludes Plaintiff's attorneys undertook a significant risk of recovering nothing when they accepted this matter on a contingent-fee basis because of the novelty of the legal issues. On the other hand, Plaintiff's attorneys must have calculated the prospects for Plaintiff's recovery were favorable enough to proceed despite the risk. Nonetheless, the deferred payment, if any, pending the outcome of the trial and the probable appeal that necessarily accompanies such contingent-fee cases also weighs in favor of a higher hourly rate.

Plaintiff also contends a higher fee is reasonable because counsel's acceptance of his case precluded them from taking other cases. Plaintiff's counsel specifically explain they are the only two attorneys in their firm, and, therefore, the entire firm was engaged in work on this case from time to time. The Court notes small firms have to select cases carefully and often have to forego some work because of previous commitments and strained resources. Plaintiff's counsel, however, have not provided any evidence that Plaintiff himself

was aware of this situation as required by Or.Rev.Stat. § 20.075(2)(b).

Plaintiff prevailed on his retaliation claim even though the jury awarded a relatively small $2,773.68 in economic damages and declined to award Plaintiff the $500,000 in noneconomic damages that he sought. In other words, Plaintiff's counsel proved Defendant engaged in unlawful employment practices in violation of Oregon law, but counsel expended substantial resources and recovered little for their client. If the Court were to reduce the amount of attorneys' fees based on this seemingly disproportionate effort, the Court might discourage attorneys from accepting employment discrimination claims when small sums are in controversy. The Court, therefore, finds the size of the verdict in this case is not a significant factor affecting the reasonableness of an attorneys' fees award.

Plaintiff also contends his counsel's hourly rate is reasonable despite the lower rates described in the Economic Survey because $225 is within the range of the prevailing market rate in the area for attorneys with their experience and expertise in a specialized field such as employment law. In support of this contention, Plaintiff offered the Crispin Declaration. Crispin, however, practices in the Portland area. Plaintiff has not explained why his counsel are entitled to a fee based on the prevailing rates in Portland when his attorneys practice in the Salem area.

Plaintiff also offered the Affidavit of Hittle, in which he stated attorneys in the Salem area with experience commensurate to Plaintiff's counsel "routinely" charge $200 to $250 per hour. Hittle further opined Plaintiff's hourly rate of $225 is "within the range of reasonable hourly rates" in the Salem community.[2]

---

**2.** Hittle also testified he personally charges $225 per hour.

On the other hand, Defendant argues a reasonable hourly rate would be $185. Defendant contends a thirty-percent increase over the median rate in the Economic Survey would be appropriate because Defendant's counsel raised their rates approximately thirty percent between 1998 and 2002, and Lee believes that level of increase is typical. The Court does not find this "evidence" or the reasoning behind it persuasive. First, the prevailing rates for defense counsel do not necessarily correlate to the appropriate hourly rates for plaintiffs attorneys who operate on a contingency-fee basis. In addition, Lee does not practice in Salem and does not appear to be familiar with Salem rates or the increases in such rates.

The Court is somewhat concerned that Plaintiff's counsel charged their hourly clients in domestic relations and criminal cases only $175 per hour at the time this case was prosecuted, which is a $50 per hour discount from the rate they seek in this matter.[3] The Court notes a typical employment discrimination claim, much like a domestic relations or criminal case, involves intense factual development and little complex legal analysis. Nonetheless, the Court finds the contingent nature and the novelty of the legal issues in this particular case justify a higher rate than Plaintiff's attorneys charge their hourly clients in other matters.

The Court finds the record is silent regarding the length and nature of the relationship between Plaintiff and his attorneys. The Court, therefore, does not rely on this factor.

Based on the foregoing and in the exercise of its discretion, the Court concludes the top hourly rate of $225 charged by Plaintiff's counsel is reasonable under the circumstances.

### b. Reasonableness of the Number of Hours

Several of the factors enumerated in Or.Rev.Stat. § 20.075(2) bear on the question whether the number of hours spent by counsel on a given case is reasonable, including: (a) the time and labor required in the proceeding, including the novelty or complexity of issues and the degree of skill required; (d) the amount involved in the controversy and the results obtained; (e) the time limitations imposed by the client or the circumstances of the case; and (g) the experience level of the attorney. The court may also consider other factors as appropriate.

As noted, a typical employment discrimination claim does not involve novel or complex legal issues, but this matter was atypical. Moreover, Defendant vigorously defended this action and continues to maintain its interpretation of the anti-discrimination statute is the correct one. Defendant filed numerous pretrial motions and proposed jury instructions on the legal issues, including a motion to certify the question to the Oregon Supreme Court. Plaintiff was required to defend repeatedly his reading of the anti-discrimination statute.

In addition to addressing the novel legal issues, Plaintiff's counsel had to develop the case factually because Defendant challenged Plaintiff's account of his separation from Defendant's employ. Plaintiff's counsel deposed several of Defendant's employees in order to determine whether Defendant's practices complied with its written policies regarding its return-to-work policy and whether Defendant followed those policies with respect to Plaintiff's termination.

---

**3.** Plaintiff's counsel explain they recently increased their hourly rate to $195 per hour for new domestic relations and criminal cases.

Plaintiff's attorneys assert they have not requested payment for all of the time they actually spent on this matter, and the Court is satisfied that Plaintiff's Petition actually represents fewer hours than counsel worked on this case. For example, Plaintiff's counsel did not include time they spent preparing the Petition for Attorneys' Fees or the Reply Memorandum. In any event, Defendant does not suggest Plaintiff's counsel did not actually work the hours claimed.

The Court finds the actual amount in controversy in this matter was relatively small as reflected in the jury's award of $2,773.68 in economic damages and no non-economic damages. Nonetheless, the Court acknowledges civil rights and discrimination actions play a larger, more public role in our society. In particular, the legal question involved in this matter could have grave consequences for future employment decisions and court cases. At a minimum, Defendant itself concluded this case presented issues that justified the expenditure of significant resources.

With respect to the efficiency of Plaintiff's counsel, both Hittle and Crispin testified the hours and services rendered were reasonable and necessary. Hittle also stated Plaintiff's lawyers enjoy reputations as "attorneys of the highest professional and ethical level." The Court also finds Plaintiff's counsel demonstrated the requisite skills necessary to perform properly and efficiently the required legal services in the prosecution of Plaintiff's action consistent with the skill level of attorneys with over 20 years of practice experience.

■ The Court specifically overrules Defendant's objection to the 3.5 hours spent by Stevens waiting for the return of the jury verdict in this matter. The Court ordered counsel for both parties to remain within fifteen minutes of the courthouse while the jury deliberated. Pursuant to that order, Stevens remained in Portland on behalf of Plaintiff. She could not return to her office in Salem and was limited in the type of services she could perform for other clients during those deliberations. Stevens admittedly worked on other case files during the deliberations and reduced the time billed to this case accordingly. Although Stevens may have been able to bring additional work to court with her, there is no evidence in the record to show she skirted her obligations to other clients during this time. The Court concludes, therefore, the 3.5 hours spent by Plaintiff's counsel waiting for the return of the jury's verdict were reasonably incurred.

In addition, the Court finds reasonable the 0.2 hours billed by Plaintiff's attorney for reading electronic messages from the Court that enclosed the Court's Opinion and Order on Defendant's Motion for Summary Judgment and "scanning" that Opinion. The Court finds this task was not clerical or administrative in nature as Defendant suggests, and it was reasonable for Plaintiff's counsel to read her own email and to review the Court's Opinion on Defendant's dispositive motion.

■ Nevertheless, the Court finds some of the activities billed by Plaintiff's counsel unreasonable, especially in light of the premium hourly rate Plaintiff seeks. Accordingly, the Court disallows 0.5 hours billed by Plaintiff's counsel for assembling copies of Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment. The assembly and copying of documents is an administrative task for which Plaintiff's counsel may not recover premium rate attorneys' fees. The fact that Plaintiff's counsel does not appear to have adequate support staff to assist with such tasks is irrelevant. Presumably the cost of any support staff employed by Plaintiff's counsel is included in counsel's hourly rate as overhead. The Court, therefore, disal-

lows Plaintiff's request for **$112.50** in fees for the 0.5 hours billed by Stevens at the rate of $225 per hour and reduces Plaintiff's award by that amount.

Plaintiff's counsel also billed 6.0 hours at $225 per hour for time spent traveling personally to and from Portland to file "important" documents in this Court. Plaintiff's counsel again rely on their lack of support staff and their general mistrust of messenger services to support this expense. The Court notes Plaintiff's counsel could avoid hiring additional staff or relying on same-day messenger services if they merely completed their pleadings in advance of the deadlines and mailed them to the Court. In any event, the Court finds it is unreasonable for Plaintiff's counsel to charge $225 per hour for such administrative tasks and instead concludes an hourly fee of $50 is reasonable for this type of task. The Court, therefore, reduces Plaintiff's request for fees by **$1,050.**

Finally, the Court disallows time billed by Stevens as co-counsel during the pretrial conference and trial. Although both Stevens and Callahan were present throughout these proceedings, Stevens did not examine witnesses, argue motions, or meaningfully participate as co-counsel. Although the Court is certain Callahan appreciated Stevens's presence and limited assistance, the Court concludes it was not reasonably necessary for two attorneys to attend and to bill for being present at the pretrial conference and the entire trial on Plaintiff's behalf even at a reduced rate of $125 per hour for Stevens's participation. The Court already has found the hourly rate of $225 to be reasonable under the circumstances of this case; however, the Court finds it would be unreasonable to raise, in effect, that hourly fee to $350 by compensating both Callahan and Stevens for work that reasonably could have been and should have been accomplished by a single attorney. The Court, therefore, re-

duces Plaintiff's request for attorneys' fees by **$3,500** for the 28.0 hours billed by Stevens as co-counsel at the hourly rate of $125 per hour.

Based on the foregoing factors and after a thorough review of the record, the Court concludes the time and labor required of Plaintiff's counsel to conduct discovery, to respond to Defendant's Motion for Summary Judgment, to prepare and to participate in the pretrial conference, and to prepare and to present evidence at trial in support of Plaintiff's discrimination claim was generally reasonable and necessary under the circumstances with only three exceptions: (1) the time spent by Stevens as co-counsel at the pretrial conference and trial; (2) the time spent by Plaintiff's counsel traveling to and from the courthouse to file documents and filing those documents in this Court; and (3) the time spent assembling and copying Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment. The Court, therefore, exercises its discretion to reduce Plaintiff's request for attorneys' fees by **$4,662.50.** Accordingly, the Court awards Plaintiff attorneys' fees in the amount of **$30,450.**

## PLAINTIFF'S BILL OF COSTS

Plaintiff filed a separate Statement of Costs and Disbursements seeking costs in the amount of $370.50. Defendant does not object to Plaintiff's costs bill. Costs generally are awarded to the prevailing party in a civil action as a matter of course unless the Court directs otherwise. Fed. R.Civ.P. 54(d). Expenses that may be taxed as costs are enumerated in 28 U.S.C. § 1920 as follows:

1) Fees of the clerk and marshal;

2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

3) Fees and disbursements for printing and witnesses;

4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

5) Docket fees under section 1923 of this title;

6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Although a district court has broad discretionary power to allow or to disallow a prevailing party to recoup the costs of litigation, the court may not tax costs beyond those authorized by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

Plaintiff seeks reimbursement for (1) $150 fee of the Clerk for filing the Complaint, (2) $175.50 in court reporter fees for two transcripts used at trial, (3) $20 docket fee, and (4) $25 fee for service of summons. All of Plaintiff's requested costs are expressly recoverable pursuant to 28 U.S.C. § 1920. Accordingly, the Court allows Plaintiff's request for costs in the amount of $370.50.

## CONCLUSION

For these reasons, the Court **GRANTS in part** Plaintiff's Petition for Attorney Fees and Costs (# 66) and awards Plaintiff attorneys' fees of **$30,450** on his retaliation claim. The Court also **GRANTS** Plaintiff's Statement of Costs and Disbursements (# 70) and awards Plaintiff $370.50 as costs.

IT IS SO ORDERED.